IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ADON CONSTRUCTION INC., a Hawaiʻi Corporation; GREEN VISION LLC, a Hawaiʻi Limited Liability Company,<br><br>Plaintiffs,<br><br>vs.<br><br>RENESOLA AMERICA INC.; KIVALU RAMANLAL; JOHN DOES 1–10; JANE DOES 1–10; DOE PARTNERSHIPS 1–10; DOE CORPORATIONS 1–10; DOE ENTITIES 1–10 and DOE GOVERNMENTAL ENTITIES 1–10,<br><br>Defendants. | CIVIL NO. 16-00568 JAO-WRP<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action arises out of Defendant Renesola America's ("Defendant") sale of allegedly defective solar panels to Plaintiffs Adon Construction, Inc. and Green Vision LLC. Plaintiffs assert Hawaiʻi state law claims against Defendant.[1] Defendant moves for judgment on the pleadings as to Counts I, III, V, VI, and X and moves for summary judgment on all claims.

---

[1] Plaintiffs' claims against Defendant Kivalu Ramanlal were dismissed. ECF No. 40 at 7.

For the reasons stated below, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion for Judgment on the Pleadings and GRANTS Defendant's Motion for Summary Judgment as to all remaining claims.

## I.    BACKGROUND

### A.    Undisputed Facts

Plaintiffs are contractors who install photovoltaic ("PV") solar panels on residential and commercial properties in Hawaiʻi.  Pl.'s Concise Statement of Facts ("CSF"), Chen Declaration ("Decl.") ¶¶ 1–2.  Between 2013 and 2014, Plaintiffs purchased PV panels from Defendant, a solar panel supplier, for $2,588,217.40. Compl. ¶ 17.  A Framework Sales Contract was drafted between the parties in 2014 and 2015, but it was never signed.  Id. ¶ 19.  Purchase invoices—dated April 17, 2013, and April 25, 2013—provide a warranty for "10 years for product, 10 years for 90% power output and 25 years for 80% power output."  Pl.'s CSF, Ex. S.

Plaintiffs installed the solar panels on residential and commercial properties. Compl. ¶ 3.  In 2015, five of Plaintiffs' customers initiated a civil suit (the "Commercial Litigation") against Plaintiffs for reasons that are in dispute.  Id. at ¶ 30.  Plaintiffs entered into a Settlement Agreement with the five commercial customers, providing them a $501,064.75 discount.  Def.'s CSF ¶ 11; Pl.'s CSF ¶ 10.  Another customer, Ramanlal, also filed suit against Plaintiffs resulting in a

judgment against Plaintiffs for damages and attorney's fees. Pl.'s CSF, Ex. 6 at 5.

## B.     Disputed Facts

Plaintiffs allege that in 2012, Defendant solicited Plaintiffs' business and represented their products as "Tier 1" and free from defects, snail trails,[2] and micro-cracks. Pl.'s CSF ¶ 2. Michael Chen, President of Adon Construction Inc., stated that based on these "Tier 1 representations," Plaintiffs offered to purchase new panels in 2012 and 2014. Pl.'s CSF, Chen Decl. ¶ 18.

Plaintiffs allege that in January 2015, Plaintiffs' customers began complaining about Defendant's solar panels because of snail trails. Compl. ¶ 21. Plaintiffs also allege that Ramanlal and the five commercial litigants brought suit against Plaintiffs, in part, because of the snail trails defect. *Id.* ¶ 30. Plaintiffs claim that they continue to experience customer complaints and will continue to accrue economic damages for the snail trails defect. *Id.* ¶¶ 54–54.

Plaintiffs and Defendant submitted expert reports regarding snail trails and power degradation. Plaintiffs' expert Phil Atoigue opined that micro-cracking, snail trails, and burnouts "occur with manufacturer fault." Pl.'s CSF ¶ 25. Defendant submitted evidence that micro-cracks can be created during the installation process. Def.'s CSF ¶¶ 6–8. After inspecting the panels in July 2018,

---

[2] Snail trails are visible cracks on the front side of a solar panel. Pl.'s CSF, Ex. B at 1. The cause and effect of snail trails is in dispute.

Plaintiffs' expert Kevin Medeiros found a 20 to 60 percent decrease in performance "directly attributable to the defects in the panels, microcracking, [sic] burnouts and snail trails in about 90% of these Renesola panels." Pl.'s CSF, Medeiros Decl. ¶¶ 6–7. Defendant, on the other hand, submitted evidence that Plaintiffs were "not yet experiencing production deficiencies" in 2015, one to two years after purchase of the panels. Def.'s CSF, Ex. 20 at 1.

**C.     Procedural History**

Plaintiffs brought this lawsuit on September 15, 2016, in the Circuit Court of the First Circuit, State of Hawaiʻi. ECF No. 1. Plaintiffs allege that Defendant sold Plaintiffs PV modules with snail trails that began to appear on the panels within one year of receiving the modules. Compl. ¶¶ 10, 23.

Plaintiffs allege ten causes of action:

- Count I: fraudulent, intentional, reckless, or negligent misrepresentation;

- Count II: tortious fraud in the inducement;

- Count III: Unfair or Deceptive Acts and Practices, HRS §480-2;

- Count IV: Deceptive Trade Practices, HRS § 481A;

- Count V: business defamation and disparagement;

- Count VI: unjust enrichment;

- Count VII: detrimental reliance;

- Count VIII:  breach of contract;

- Count IX:  breach of express warranty; and

- Count X:  breach of duty to mitigate damages.

*Id*. ¶¶ 57–184.  Plaintiffs also assert a breach of duty to mitigate the claim against Ramanlal.  *Id*. ¶¶ 176–184.  Plaintiffs allege they have suffered $808,677.55 in damages arising from the customer lawsuits.  *Id.* ¶ 70.

Defendant removed the case to the U.S. District Court for the District of Hawaii on October 20, 2016, on the grounds that Ramanlal was fraudulently joined to prevent diversity jurisdiction.  ECF No. 1.  The Court later denied Plaintiffs' motion to remand, ECF No. 31, and granted Ramanlal's motion to dismiss, ECF No. 40.  On November 20, 2018, Defendant moved for judgment on the pleadings as to Counts I, III, V, VI, and X and moved for summary judgment on all counts.  ECF No. 117; ECF No. 121.

## II.   LEGAL ANALYSIS

### A.   Legal Standards

#### i.   Rule 12(c)

Rule 12(c) of the Federal Rules of Civil Procedure ("FRCP") states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard governing the Rule 12(c) motion for judgment on the pleadings is the same as that governing a

Rule 12(b)(6) motion to dismiss. *Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); *see also McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). Accordingly, "[a] judgment on the pleadings is properly granted when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Enron Oil Trading & Transp. Co. v. Walbrook Ins. Co.*, 132 F.3d 526, 528 (9th Cir. 1997) (citing *McGann v. Ernst & Young*, 102 F.3d 390, 392 (9th Cir. 1996)).

As with a motion to dismiss, a claim may survive a motion for judgment on the pleadings if the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although a court must accept as true all allegations contained in the complaint, this obligation does not extend to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557). "[W]here the well-pleaded facts do not permit the court to infer

more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. Sprewell, 266 F.3dR. Civ. P. 8(a)(2)) (some alterations in original).

Under Rule 12(b)(6), review is ordinarily limited to the contents of the complaint. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Campanelli v. Bockrath*, 100 F.3d 1476, 1479 (9th Cir. 1996). The Court treats a 12(b)(6) motion as a motion for summary judgment if it considers matters outside the pleadings. *Anderson v. Angelone*, 86 F.3d 932, 934 (9th Cir. 1996).

### ii.    Rule 56(a)

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The Court must view the facts in the light most favorable to the nonmoving party. *State Farm Fire & Cas. Co. v. Martin*, 872 F.2d 319, 320 (9th Cir. 1989).

Once the moving party has met its burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must present specific facts showing that there is a genuine issue for trial. *T.W. Elec.*, 809 F.2d at 630; Fed. R. Civ. P. 56(c). The opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support its legal theory. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). The nonmoving party cannot stand on its pleadings, nor can it simply assert that it will be able to discredit the movant's evidence at trial. *T.W. Elec.*, 809 F.2d at 630; *Blue Ocean Pres. Soc'y v. Watkins*, 754 F. Supp. 1450, 1455 (D. Haw. 1991).

If the nonmoving party fails to assert specific facts beyond the mere allegations or denials in its response, the court may enter summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990); Fed. R. Civ. P. 56(e). There is no genuine issue of fact if the opposing party fails to offer evidence "sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

**B.    DISCUSSION**

### i.    Motion for Judgment on the Pleadings

#### a.  Reckless/Negligent Misrepresentation (Count I) and Unjust Enrichment (Count VI)

Defendant moves for judgment on the pleadings arguing that Plaintiffs'

reckless/negligent misrepresentation (Count I) and unjust enrichment claims (Count VI) are barred by the economic loss doctrine. The economic loss rule bars tort claims when the purchaser alleges injury only to the product itself, resulting in purely economic loss. *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858 (1986). In *East River*, the Supreme Court held that a customer's dissatisfaction with product quality does not state a cognizable tort claim, as a commercial manufacturer has no duty in negligence or strict product liability to prevent a product from injuring itself. *Id*. at 871–72. A customer can bring a breach of warranty action or revoke acceptance and sue for breach of contract, rather than rely on tort liability. *Id.*

In their unjust enrichment claim, Plaintiffs seek damages for injury to the product itself, specifically "visible damages and/or defects in the form of microfractures, and/or cracking." Compl. ¶ 113. They allege they have suffered purely economic loss. *Id.* ¶ 114. Accordingly, Plaintiffs' unjust enrichment claim is barred by the economic loss doctrine and Defendant's Motion for Judgment on the Pleadings is GRANTED as to Plaintiffs' unjust enrichment (Count VI) claim.

The Hawaiʻi Supreme Court has recognized an exception to the economic loss doctrine for negligent misrepresentation claims that are founded on a breach of duty separate from the defendant's contractual duty. *State by Bronster v. U.S. Steel Corp.*, 82 Hawaiʻi 32, 41, 919 P.2d 294, 303 (1996). In *U.S. Steel*, the defendant

9

advertised weathering steel as resistant to corrosion, and wrote multiple letters to the architectural firm hired to design the Aloha Stadium. In the letters, the defendant insisted its steel was suitable for the stadium. *Id.* at 37, 919 P.2d at 298. Based on the defendant's statements, the City and County of Honolulu approved the use of weathering steel, but the product failed to protect the stadium from corrosion. The State brought a negligent misrepresentation claim against the defendant, and the court found that the economic loss rule did not bar the plaintiff's negligent misrepresentation claim because the claim was not based on a products liability theory. *Id.* at 40, 919 P.2d at 301.

The court reasoned that the claim was based on flaws in communications, not simply flaws in the product itself:

> [A]s to the negligent misrepresentation claim, the state does not seek to recover economic losses stemming from a claim that [defendant] was negligent in designing or manufacturing the steel. Rather, the recovery sought stems from a claim that [defendant] did not exercise reasonable care or competence in obtaining or communicating information for the guidance of the state in its decision regarding the steel to be used in the construction of the stadium, namely, that weathering steel was appropriate for use in the stadium project, given the proposed location for the stadium and the weather conditions of the proposed location. In other words, relative to the negligent misrepresentation claim, the state seeks damages not for [defendant's] acts or omissions in its design or manufacture of weathering steel, but for [defendant's] actions and/or omissions in its promotions, recommendations, investigations and/or opinions regarding the use of weathering steel.

*Id.* at 42, 919 P.2d at 304.

In applying *U.S. Steel*, Hawaiʻi state courts bar tort claims when the alleged duty breached sounds in contract, but not when the duty sounds in tort. *Leis Family Ltd. P'ship v. Silversword Eng'g*, 126 Hawaiʻi 532, 538–39, 273 P.3d 1218, 1224–25 (App. 2012) (applying the economic loss rule even when there was no privity between parties because the alleged duty breached sounded in contract); *Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Directors v. Venture 15, Inc.*, 115 Hawaiʻi 232, 295, 167 P.3d 225, 288 (2007), *as corrected on denial of reconsideration* (Sept. 20, 2007) (holding negligence claims not barred when based on violations of the uniform building code).  Accordingly if Plaintiffs' claims are founded on a breach of duty separate and apart from any contractual duty, then the economic loss rule does not apply.  *See U.S. Steel*, 82 Hawaiʻi at 42, 919 P.2d at 304.

Plaintiffs allege in Count I:

> 62. As RENESOLA knew and/or should have known of the tendency of their products to become damaged and/or defective in the form of micro-fracturing, and/or cracking, a defect also known as "snail trail(s)", and did not disclose this information to PLANTIFF, RENESOLA intended to create a justifiable reliance on a fraudulent, material misrepresentation of their product.

> 63. RENESOLA failed to advise PLAINTIFF that their PV Cell and Panels/Modules were prone to damages and/or defects in the form micro-fracturing, and/or cracking, a defect also known as "snail trail(s)", and *continually promised and represented* that the RENESOLA PV Panels/Modules were of "Tier 1" quality, free from defects in material, workmanship, and title.

. . .

> 66. PLAINTIFF did enter into several contractual agreements with RENESOLA, *due to their actual reliance on RENESOLA's representations and promises* that their PV Panels/Modules were of "Tier 1" quality, free from damages and defects in material, workmanship, and title; *as well as their promise and representation that it would stand behind its product and warranty the same*.

Compl. ¶¶ 62–63, 66 (emphases added).

Plaintiffs allege that Defendant gave false guidance when stating the panels were "'Tier 1' quality, free from damages and defects in material, workmanship, and title." Accordingly, Plaintiffs allege that Defendant breached the duty to "exercise reasonable care or competence in obtaining or communicating information for the guidance of others in their business transactions." *See U.S. Steel*, 82 Hawaiʻi at 41, 919 P.2d at 303. This is separate from Defendant's contractual duty to provide a defect-free product. *See id.* at 41–42, 919 P.2d at 303–304. Defendant's Motion for Judgment on the Pleadings is therefore DENIED as to Plaintiffs' negligent misrepresentation (Count I) claim.

### b. Unfair or Deceptive Acts and Practices – HRS § 480-2 (Count III)

Defendant argues that because Plaintiffs are not consumers and because Defendant's alleged failure to disclose the snail trails defect does not affect competition, Plaintiffs' Unfair or Deceptive Acts and Practices claim (Count III)

must be dismissed.  HRS § 480-2 states:

> (a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful.
>
> . . .
>
> (d) No person other than a consumer, the attorney general or the director of the office of consumer protection may bring an action based upon unfair or deceptive acts or practices declared unlawful by this section.
>
> (e) Any person may bring an action based on unfair methods of competition declared unlawful by this section.

Haw. Rev. Stat. Ann. § 480–2.  "A practice is unfair when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Tokuhisa v. Cutter Mgmt. Co.*, 122 Hawaiʻi 181 (App. 2009); *see also Han v. Yang*, 84 Hawaiʻi 162, 177 (App. 1997) (describing HRS § 480-2 as "outlaw[ing] unfair methods of competition . . . in sweeping terms") (citation omitted).

To state an unfair competition claim under § 480–2, Plaintiffs must allege (1) a violation of HRS chapter 480; (2) which causes an injury to the plaintiff's business or property; and (3) proof of the amount of damages.  *Davis*, 122 Hawaiʻi at 435, 228 P.3d at 315.  In addition, Plaintiffs must include "the nature of the competition" in the Complaint by specifically alleging "he or she was harmed as a result of actions of [D]efendant" and demonstrating "how Defendants conduct

would negatively affect competition." *Gurrobat v. HTH Corp.*, 133 Hawai'i 1, 21, 323 P.3d 792, 812 (2014) (quotation omitted).  Plaintiffs allege:

> 90. RENESOLA's failure to disclose material facts was an act of unfair competition and/or deceptive act or practice as it *created an unfair advantage among the offers of similar-type products being reviewed by PLAINTIFF*, and created reliance by PLAINTIFF on the promises and/or representations made.
>
> 91. RENESOLA's non-disclosure of material facts actively harmed and prejudiced the position of PLAINTIFF, as PLAINTIFF was unable compare [sic] the true product against other competitors' and/or appeal to RENESOLA prior to sustaining severe damages due to client rejection of the product.

Compl. ¶¶ 90–91 (emphasis added).

In consideration of the Hawai'i courts' approach to unfair competition claims, the Court finds that Plaintiffs adequately pleaded a violation of HRS § 480–2 by articulating how Renesola's conduct negatively affected competition. Compl. ¶¶ 90–91.  Defendant's Motion for Judgment on the Pleadings is DENIED as to Count III.

### c. Business Defamation and Disparagement (Count V) and Breach of Duty to Mitigate Damages (Count X)

Plaintiffs have withdrawn their business and disparagement claim (Count V) and did not intend to bring a breach of duty to mitigate damages claim (Count X). ECF No. 173 at 23.  Counts V and X are DISMISSED.

### ii.    Motion for Summary Judgment

Defendant moves for summary judgment on all claims.[3]  Having granted Defendant's Motion for Judgment on the Pleadings as to Count VI, Defendant's Motion for Summary Judgment as to that claims is MOOT.  The Motion is also MOOT as to Counts V and X because Plaintiffs have withdrawn both claims. Accordingly, the Court considers Defendant's Motion for Summary Judgment as to Counts I, II, III, IV, VII, VIII, and IX.

Defendant moves for summary judgment arguing:  (1) Plaintiffs have not presented evidence that the alleged "Tier 1" representation was false, as required for Counts I, II, III, IV, and VII; (2) Counts VIII and IX cannot survive summary judgment because Plaintiffs cannot show they have a right to sue for breach; and (3) Counts II and IV cannot stand because Plaintiffs cannot produce evidence that Defendant had knowledge of the allegedly defective panels. Defendant also moves for summary judgment on all claims on the grounds that Plaintiffs cannot establish three facts essential to their claims:  (1) that Plaintiffs can identify any cognizable damages, (2) that the snail trails at issue in the Ramanlal Judgment and Commercial Litigation Settlement Agreement are a manufacturing defect, and (3) that the mere presence of snail trails affects the performance of the PV modules.

---

[3]  In considering Defendant's Motion for Summary Judgment, the Court does not consider the affidavits attached to Defendant's Reply regarding the Motion for Summary Judgment.  Local Rule 56.1(h).

### a. Plaintiffs' Experts

Defendant asks the Court not to consider Mr. Atoigue and Travis Gilmore's expert reports, attacking their qualifications. The Court need not reach this issue because even if Plaintiffs' experts are qualified, summary judgment must be granted on all remaining counts.

### b. Fraud and/or Intentional and/or Reckless and/or Negligent Misrepresentation (Count I), Tortious Fraud in the Inducement (Count II), Unfair or Deceptive Trade – § 480-2 (Count III), Deceptive Trade Practices – § 481A (Count IV), and Detrimental Reliance (Count VII)

Defendant moves for summary judgment arguing that Plaintiffs failed to sufficiently show that Defendant made false statements. Counts I, II, III, IV, and VII all require a false statement. *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 386, 14 P.3d 1049, 1066 (2000) (fraud); *U.S. Steel*, 82 Hawai'i at 41, 919 P.2d at 303 (negligent misrepresentation); *York v. Jordan*, No. CV 13-00311 DKW-RLP, 2014 WL 12596317, at *8 (D. Haw. Oct. 27, 2014) (fraud in the inducement); *Courbat v. Dahana Ranch, Inc.*, 111 Hawai'i 254, 261, 141 P.3d 427, 434 (2006) (unfair or deceptive acts and practices); Haw. Rev. Stat. § 481A–3 (deceptive trade practices); *see Thompson v. Porter*, No. CIV. 11-00378 JMS, 2011 WL 2974070, at *3 (D. Haw. July 20, 2011) (detrimental reliance).

Plaintiffs have not established a genuine issue of material fact as to their reliance on a *false statement*. Mr. Chen stated in his declaration, "In 2012

Renesola sales representative Jane Dong initially solicited [Plaintiffs'] business and explicitly represented that Renesola's products were unblemished, high-quality 'Tier One' panels that were high-efficiency and free from defects, microcracks [sic] and snail trails." Pl.'s CSF, Chen Decl. ¶ 2. The only other evidence of the Tier 1 statement appears in an undated screenshot of a website, Pl.'s CSF, Ex. A, which Plaintiffs assert was dated May 2015, Def.'s CSF, Ex. 2 at 9, *after* the purchases. Even if these statements were asserted before the purchases, and even if Plaintiffs relied on these statements, Plaintiffs failed to establish a genuine issue of material fact regarding whether the statements were false at the time they were made.

Plaintiffs failed to produce sufficient evidence showing the panels were not defect-free and snail trail free when sold, relying on two exhibits. Plaintiffs highlight Exhibit B, which is an article about snail trails, published by Renesola sometime after January 2012.[4] Pl.'s CSF, Ex. B. But the article addresses reports of snail trails found "after several months' installation." *Id.* at 1. This undated article is insufficient to create a genuine issue of material fact regarding whether the panels were defect-free and free of snail trails when the allegedly false statement was made. Plaintiffs' reliance on Exhibit W—a *September 2014* article about how snail trails reduce productivity—does not even reference Defendant.

---

[4] The article is undated but references a source published in January 2012.

Plaintiffs failed to establish a genuine dispute of material fact regarding the falsehood of any of Defendant's statements, and therefore Defendant's Motion for Summary Judgment is GRANTED as to Counts I, II, III, IV, and VII.[5]

### c. Breach of Contract (Count VIII)

Defendant argues that Plaintiffs' claims must fail because they do not allege a cognizable remedy. Plaintiffs conceded at the hearing that their claimed damages arise exclusively from the Ramanlal Judgment, Settlement Agreement, and potential future losses.

Plaintiffs insist they were under contract with Defendant when asserting their breach of contract claims, but take a contrary position when asserting their tort claims. *Compare* Compl. ¶ 19 *with* ECF No. 173 at 6. Plaintiffs cannot have it both ways. The Court finds that the Framework Sales Contract was in effect, as Plaintiffs admitted in the Complaint:

> 19. Similarly, the "Framework Sales Contract", Contract Reference No. ADON20140715.USF, as agreed to between RENESOLA and PLAINTIFF, was effective July 15, 2014 and expired July 15, 2015. The Framework Sales Contract

---

[5] Related to Defendant's argument that Plaintiffs failed to show reliance on a false statement, Defendant argues that Plaintiffs did not offer an issue of fact regarding Defendant's knowledge of the defect. Defendant's knowledge of the defect is a necessary element to Counts II, IV, and the fraud claim in Count I. *See Aana v. Pioneer Hi-Bred Int'l, Inc.*, 965 F. Supp. 2d 1157, 1178 (D. Haw. 2013); *York*, 2014 WL 12596317, at *8. As Plaintiffs failed to establish evidence that a false statement has been made, they similarly did not establish a material issue of fact regarding Defendant's knowledge of the alleged falsehood.

> contained a Manufacturer Warranty; Limited Product Warranty;
> and a Limited Peak Power Warranty, and represents that the,
> "Products shall be free from defects in material, workmanship,
> and title." . . .
>
> 134. PLAINTIFF and RENESOLA entered into a contract for
> the sale of goods periodically via the Proforms Invoices on
> April 17, 2013 and April 25, 2013, and again on July 15, 2014;
> most recently expiring on July 15, 2015 (hereinafter,
> collectively "Contract Agreements").

Compl. at ¶¶ 19, 134. Factual assertions in pleadings are binding on the party who made them. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988); *Casumpang v. Hawaiian Commercial & Sugar Co.*, 712 Fed.App'x. 709, 710 (9th Cir. 2018).

Although there was a contract in effect, Plaintiffs failed to meet their burden of establishing cognizable damages. *See Malani v. Clapp*, 56 Haw. 507, 542 P.2d 1265 (1975). The Hawai'i Supreme Court limits damages in breach of contract cases to those caused by the breach:

> The general rule is that in an action for damages for breach of
> contract only such damages can be recovered as are the natural
> and proximate consequence of its breach; that the damages
> recover-able must be incidental to the contract and be caused by
> its breach; as the cases express it, such as may reasonably be
> supposed to have been in the contemplation of the parties at the
> time the contract was entered into.

*Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 128, 839 P.2d 10, 32 (1992) (citation and quotation omitted).

Plaintiffs failed to prove that the Ramanlal suit was related to snail trails.

The only reference to snail trails in that suit appears in Ramanlal's deposition, when he addressed a contractor's comment about "cracks on the panels." Pl.'s CSF, Ex. H at 2. Neither the complaint nor the findings of fact and conclusions of law in the Ramanlal Litigation mention snail trails. Def.'s CSF, Ex. 5, Ex. 6. There is insufficient evidence to infer that Defendant's breach caused the damages Plaintiffs paid in the Ramanlal Litigation.

Plaintiffs cannot seek damages for the discount they paid to the five commercial customers. Snail trails are not referenced in the Commercial Litigation Complaint nor the stipulated dismissal. Def.'s CSF, Ex. 8. Snail trails are mentioned in the Settlement Agreement, but Rule 408 prohibits the use of settlement negotiations or agreements "either to prove or disprove the validity *or amount* of a disputed claim." Fed. R. Evid. 408 (emphasis added); *see also McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1285 (D. Haw. 2007). [6] Because the Settlement Agreement would be inadmissible at trial, the Court does not consider it here. *See Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (stating courts may only consider admissible evidence when ruling on a motion for summary judgment).

Regarding future losses, Hawaiʻi law precludes speculative damages in

---

[6] As the court noted in *McDevitt*, many factors go into a settlement agreement. Plaintiffs also could have, but chose not to, join Defendant as a party in the commercial litigation.

actions arising under contract or in tort.  *See Roxas v. Marcos*, 89 Hawaiʻi 91, 140–141 n. 33, 969 P.2d 1209, 1258–1259 n. 33 (1998).  In addition, Plaintiffs agreed at the hearing that the future damages they pleaded are speculative.  Plaintiffs also conceded at the hearing that they no longer possess the panels and cannot revoke acceptance.  Plaintiffs failed to establish a cognizable remedy, and Defendant's Motion for Summary Judgment is GRANTED as to Count VIII.

### d.  Breach of Express Warranty (Count IX)

Defendant moves for summary judgment arguing that Plaintiffs have not established a genuine issue of fact regarding whether the modules sold were defective at the time the customer disputes arose,[7] but the Court finds otherwise. For their breach of warranty claim, Plaintiffs must establish: "(1) Defendants made an affirmation of fact or promise regarding the product, (2) that statement became part of the basis of the bargain, and (3) the product failed to perform according to the statement."  *Stoebner Motors, Inc. v. Automobili Lamborghini S.P.A.*, 459 F. Supp. 2d 1028, 1035 (D. Haw. 2006).  A party's "liability for breach of an express warranty derives from, and is measured by, the terms of that

---

[7]  Defendant has not identified which claim must fail based on this argument. Plaintiffs' fraud claims, for example, do not require a finding that the snail trails affected performance, but rather require a finding that Plaintiffs relied upon statements that there were no snail trails in making their purchase.  Plaintiffs' breach of warranty claim, however, requires evidence that the solar panels' power degradation reached below the level specified in the warranty.

warranty." *Kawamata Farms, Inc., v. United Agri. Products*, 86 Hawai'i 214, 236, 948 P.2d 1055, 1077 (1997). And damages are "an essential element" in a breach of warranty claim. *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 628 (8th Cir. 1999).

A warranty was allegedly affixed to the Framework Sales Contract, warranting its panels "to be free from macro defect in materials and workmanship under normal application, installation, utilization and service conditions." Def.'s CSF, Ex. 4. The April 25 and April 27 Invoices also provide a warranty for "10 years for product, 10 years for 90% power output and 25 years for 80% power output." Pl.'s CSF, Ex. S.

Defendant argues that Plaintiffs failed to establish a genuine issue of material fact regarding whether the panels' power output fell below the warrantied level. While Defendant submitted evidence that micro-cracks can be created during the installation process, Def.'s CSF ¶¶ 6–8, Plaintiffs' expert Mr. Atoigue opined that micro-cracking, snail trails, and burnouts "occur with manufacturer fault," Pl.'s CSF ¶ 19.[8] In addition, documents from 2015 reference Defendant's

---

[8] Defendant argues that because this evidence comes from the Atoigue Reports, it fails to create an issue of fact because this evidence fails to meet the requirements of FRCP 26(a)(2)(B). It is unclear from its Motion whether Defendant is asking the Court to strike the Atoigue Reports. The Court declines to address this argument in this Order. Defendant's motion to exclude the expert testimony of Atoigue was denied on March 15, 2019. ECF No. 175.

attempt to fix the snail trails issue, suggesting snail trails can occur during the manufacturing process. Pl.'s CSF, Ex. E, Ex. F. These proffered facts establish a genuine issue of material fact.

Next, Defendant argues that Plaintiffs have not established a genuine issue of fact regarding the snail trails' effect on solar panel performance. Again, the Court finds otherwise. Plaintiffs' inspector Mr. Medeiros noted a 20 to 60 percent decrease in performance "directly attributable to the defects in the panels, microcracking, [sic] burnouts and snail trails in about 90% of these Renesola panels," Medeiros Decl. ¶¶ 6–7, which is sufficient to establish a genuine issue of fact regarding the snail trails' effect on performance. *See Thomas v. Newton Int'l Enterprises*, 42 F.3d 1266, 1270 (9th Cir. 1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion."); *see also Mountain W. Holding Co. v. Montana*, 691 F. App'x 326, 330 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc* (June 27, 2017).

Defendant also unpersuasively argues that Plaintiffs cannot maintain their claim for breach of warranty because (1) Plaintiffs assigned their warranty rights and (2) Plaintiffs fail to show power degradation below the warrantied amount. Defendant conceded at the hearing that Plaintiffs did not assign their warranty rights. *See* Chen's Decl. ¶¶ 19–20. As noted above, there is a question of fact

regarding whether the panels experienced power degradation below the warrantied amount. *See* Medeiros Decl. ¶¶ 6–7.

Finally, Defendant argues that Plaintiffs' breach of warranty claim must fail because they have not established the existence of cognizable damages. Under the UCC, parties may agree to limit the buyer's available remedies, Haw. Rev. Stat. § 490:2-719, which is what happened here. The warranty affixed to the Framework Sales Contract states:

> Under no circumstances shall RENESOLA JIANGSU be liable for any indirect, incidental, consequential, special, or punitive damages, including without limitation, loss of profit or revenue, loss of business opportunities, loss of production, loss of goodwill or reputation, arising from the breach of this 'Limited Warranty for PV Modules' regardless of the type of claim and even if RENESOLA JIANGSU has been advised of the possibility of such damages.

Def.'s CSF, Ex. 4 at 4.

Even if the warranty or Framework Sales Contract did not control, the UCC only allows for certain remedies. A buyer may recover direct damages for breach of warranty, measured as "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted." Haw. Rev. Stat. § 490:2-714. In some instances, the buyer may be entitled to incidental or consequential damages:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully

rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.

(2) Consequential damages resulting from the seller's breach include

(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and

(b) injury to person or property proximately resulting from any breach of warranty.

Haw. Rev. Stat. § 490:2-715. Alternatively, a buyer may reject the goods or revoke acceptance. Haw. Rev. Stat. §§ 2-608(3), 2-711(1).

Whether the Framework Sales Contract applied or only the UCC controls, Plaintiffs failed to establish damages. The contract warranty explicitly precludes the damages sought and, in any event, Plaintiff has not proffered sufficient evidence that the damages they seek were directly or proximately caused by the breach of warranty. There is no evidence that the damages from the Commercial or Ramanlal Litigations represent the difference between the value of the panels accepted and the value they would have had if they had been as warranted. Even if incidental or consequential damages were permissible under the warranty, the admissible litigation records from those cases do not support an inference that the snail trails were the proximate cause of Plaintiffs' damages. In addition, Plaintiffs conceded that they cannot revoke acceptance. Accordingly, Plaintiffs failed to establish a cognizable remedy for their breach of warranty claim. Defendant's

motion for summary judgment is GRANTED as to Count IX.

### III.   CONCLUSION

For the foregoing reasons, Counts V and X are DISMISSED.  Defendant's

Motion for Judgment on the Pleadings is GRANTED as to Count VI and DENIED

as to Counts I and III.  Defendant's Motion for Summary Judgment is GRANTED

as to Counts I, II, III, IV, VII, VIII, and IX.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, May 23, 2019.



　/s/　Jill A. Otake_____
Jill A. Otake
United States District Judge

CIVIL NO. 16-00568 JAO-WRP; *ADON v. RENESOLA*; ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

26